United States District Court
Northern District of California

1

2

3                    **UNITED STATES DISTRICT COURT**

4                    **NORTHERN DISTRICT OF CALIFORNIA**

5

6

7    **NOBELBIZ, INC.**                              **Case No.: 13-CV-2518 YGR**

8          **Plaintiff,**                            **ORDER GRANTING MOTION TO DISMISS FOR
                                                      LACK OF PERSONAL JURISDICTION AND**
9          **v.**                                    **DISMISSING CASE**

10   **VERACITY NETWORKS, LLC,**

11         **Defendant.**

12

13   **I.      INTRODUCTION**

14         Plaintiff NobelBiz, Inc. has patented a method of disguising a long-distance caller's phone

15   number so that it looks like a local number on caller ID.  This innovation increases contact rates

16   for, e.g., collection agencies and telemarketers.  Plaintiff alleges that its invention's name,

17   "LocalTouch," is a common-law trademark.

18         Defendant Veracity Networks, LLC is a Provo, Utah-based telecom company that sells

19   internet services, as well as internet-based phone and cable services, to residential and small

20   business customers in Utah.  Veracity's motto is: "World Class Service with a Local Touch."  It

21   allegedly offers its customers a service called a "Nationwide Local Presence Number," which

22   Plaintiff describes as a "local caller ID management service."

23         Plaintiff sues for trademark and patent infringement.  Dkt. No. 1 ("Compl.").  Now before

24   the Court is Veracity's motion to dismiss this case for lack of personal jurisdiction.  Dkt. No. 8

25   ("Mot.").  The Motion is fully briefed.  Dkt. Nos. 15 ("Opp'n"), 30 ("Reply").  Having carefully

26   reviewed the parties' papers and having had the benefit of oral argument, for the reasons set forth

27   below the Court **GRANTS** Veracity's motion and **DISMISSES** this case without prejudice to later

28   refiling in a court of competent jurisdiction.

United States District Court
Northern District of California

## II.    LEGAL STANDARD

Case law distinguishes between two types of personal jurisdiction a court may exercise over an out-of-state defendant: "general" and "specific" jurisdiction.  *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).  Here, Plaintiff concedes that Defendant is not subject to general personal jurisdiction in California.  Reply at 2.  The Court therefore focuses on specific jurisdiction.

The Ninth Circuit applies a three-part test to determine whether a non-resident defendant's activities are sufficiently related to the forum state to establish specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

With respect to the first part of this test, "purposeful direction" and "purposeful availment" are two distinct concepts: courts generally use a purposeful direction analysis in cases sounding in tort but a purposeful availment analysis in cases sounding in contract.  *Compare*, *e.g.*,  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (purposeful direction test in tort case) *with Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) (purposeful availment test in contract case).  The purposeful direction test applies in intellectual property infringement cases.  *See*, *e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (trademark); *Symantec Corp. v. Acronis, Inc.*, C 12-05331 SI, 2013 WL 496290, at *3-4 (N.D. Cal. Feb. 7, 2013) (patent); *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) cert. denied, 132 S. Ct. 1101 (U.S. 2012) (copyright).  To determine whether the purposeful-direction prong is satisfied, courts apply "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo*, 647 F.3d at 1228 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir.

1    2006)).  This effects test, drawn from *Calder v. Jones*, 465 U.S. 783 (1984), "requires that 'the

2    defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum

3    state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"

4    *Mavrix Photo*, 647 F.3d at 1228 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d

5    1124, 1128 (9th Cir. 2010)).

6          Plaintiffs bear the burden of establishing both purposeful direction through the *Calder*

7    effects test and that that their claims arise out of or relate to the defendant's forum-related activities.

8    *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  If they do so, then "the defendant

9    must come forward with a 'compelling case' that the exercise of jurisdiction would not be

10   reasonable."  *Id.*  "But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the

11   case must be dismissed."  *Id.*

12         Here, the motion to dismiss is based on written materials (pleadings, declarations, and

13   exhibits) rather than an evidentiary hearing.  Accordingly, the plaintiffs need only make a prima

14   facie showing of jurisdiction.  *Schwarzenegger*, 374 F.3d at 800.  A plaintiff makes a prima facie

15   showing by producing admissible evidence which, if believed, would be sufficient to establish the

16   existence of personal jurisdiction.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  In

17   deciding whether such a showing has been made, a district court must accept as true the

18   uncontroverted allegations in the complaint; where allegations are contested, they are construed in

19   the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor.  *AT&T v.*

20   *Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

21   **III.   DISCUSSION**

22         As set forth above, the *Calder* effects test has three prongs.  The Court's analysis focuses on

23   the "express aiming" prong, which is the sine qua non of purposeful direction.  NobelBiz's

24   principal argument is that even though Veracity is a Utah-based company, it has designs on a

25   national market and therefore may be subject to specific personal jurisdiction in any state it has

26   targeted.  *See generally* Opp'n 1, 14.[1]

27   _____

28   [1] NobelBiz's secondary argument is that Veracity is subject to personal jurisdiction in California
     because Veracity's customers use its long-distance and other telephone services to place calls into
     California, and because the allegedly infringing caller ID service can be used to make a call placed

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court rejects that argument.  NobelBiz's declarations and exhibits fail to make the

2  required prima facie showing that Veracity has "expressly aimed" its commercial activities at

3  California specifically, or alternatively at a broader market that includes California.  On the

4  contrary, NobelBiz's materials unequivocally characterize Veracity as a Utah-based company doing

5  business, and seeking to do business, in Utah.  The exhibits offered to show Veracity's purposeful

6  direction at California are instead replete with references to Veracity as a "local Utah Internet

7  provider," the recipient of "local Utah awards," "a leading Utah telecommunications provider," a

8  "locally owned" provider serving customers "throughout Utah," "Utah's business choice," and so

9  forth.  Opp'n, Exs. 4, 4, 6, 9.  One document states that "Veracity services are available to business

10  and residents in American Fork, Provo, Orem, Traverse Mountain, Salt Lake City, Murray, Ogden,

11  Kaysville, Bountiful, Midvale, [and] St. George"—all Utah municipalities—and boasts of

12  Veracity's having been "recognized as the best telecommunications provider in the state of Utah."

13  *Id.*, Ex. 5 at 2.  A printout of a Veracity webpage, which NobelBiz frequently cited at oral

14  argument, shows Veracity referring to itself as "one of Utah's fastest growing telecommunication

15  providers" and "the best telecommunications provider in Utah."  *Id.*, Ex. 8.  The webpage

16  elaborates: "We have the capabilities, expertise, and knowledge to perform like a national provider,

17  but we are true to our motto: 'World Class Service With a Local Touch.'"  *Id.*  The webpage

18  continues by boasting that its customers enjoy service "that only a local company can provide."  *Id.*

19  In sum, NobelBiz's own exhibits severely undercut its position that Veracity seeks to cater to a

20

21  to California from Utah appear to come from California.  Opp'n at 1, 9 ("Even if California

22  residents cannot 'purchase' Veracity's services, they are directly affected by them as they can and
   do receive calls through Veracity's infringing services."), 10 ("Veracity's customers make calls to

23  residents of California and employ a Veracity service so that the caller ID appears as a California
   number."), 14.  The argument is without merit.  Veracity's customers are not Veracity.  The fact

24  that they may use Veracity long-distance service to call California, or that Californians may receive

25  a spoofed caller ID number in the course of a call placed by a Veracity customer, is not a cause of
   any of NobelBiz's alleged injuries.  The alleged injuries arise from alleged infringement *by*

26  *Veracity*.  NobelBiz seeks to analogize Veracity's customers to a distribution chain, *see* Opp'n at 9

27  (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994)), but
   the analogy is inapposite.  NobelBiz has not suggested that Veracity's customers can purchase

28  Veracity services and then resell them to another.  Veracity's customers are the end of the
   distribution chain, not an intermediary link in it.

4

1    nationwide market.  On the contrary, NobelBiz's exhibits, even given the benefit of reasonable

2    inferences, show a Utah company whose key selling point appears to be its distinctly local

3    character.  The exhibits, in fact, show Veracity distinguishing itself from national companies by

4    measuring itself against only Utah companies.  *E.g.*, *id.*, Ex. 5 (Veracity press release boasting of

5    having been "one of over 80 Utah companies" to be included on a list of fast-growing U.S.

6    businesses, wherein Veracity CEO expresses pride at "receiv[ing] national recognition for our

7    corporate growth and *local dedication to Utah's residents and businesses*") (emphasis supplied).

8    The exhibits marshaled by NobelBiz do not admit of the interpretation NobelBiz draws from them.

9         The Court is also not persuaded by NobelBiz's argument that Veracity "expressly aimed"

10   itself at California solely by virtue of its website.  "Not all material placed on the Internet is, solely

11   by virtue of its universal accessibility, expressly aimed at every state in which it is accessed."

12   *Mavrix Photo*, 647 F.3d at 1231.  "[M]aintenance of a passive website alone cannot satisfy the

13   express aiming prong." *Brayton Purcell*, 606 F.3d at 1129.  However, "operating even a passive

14   website in conjunction with 'something more'—conduct directly targeting the forum—is

15   sufficient."  *Mavrix Photo*, 647 F.3d at 1229 (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284

16   F.3d 1007, 1020 (9th Cir. 2002)).  "In determining whether a nonresident defendant has done

17   'something more,' we have considered several factors, including the interactivity of the defendant's

18   website . . . ; the geographic scope of the defendant's commercial ambitions . . . ; and whether the

19   defendant 'individually targeted' a plaintiff known to be a forum resident . . . ." *Id.*(citations

20   omitted).  "It is the aggregate effect of a defendant's contacts with the forum that courts consider,

21   not individual acts taken in isolation, to determine if jurisdiction exists."  *Wine Grp. LLC v.*

22   *Levitation Mgmt., LLC*, CIV. 2:11-1704 WBS J, 2011 WL 4738335, at *6 (E.D. Cal. Oct. 6, 2011)

23   (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 606-07 (9th Cir. 2010)).

24        The aggregate effect of Veracity's website operations, including its presence on various

25   social media, does not support the exercise of specific personal jurisdiction over Veracity in

26   California.  Veracity's website does not specifically target California.  Users who attempt to inquire

27   about Veracity's services through its website are required to enter their addresses; it is undisputed

28   that when users enter an address outside Utah, the website gives the following message: "[O]h-no!

United States District Court
Northern District of California

5

1    We're sorry, we can't find an exact match for your address.  Veracity Networks services may not

2    be available where you live.  For additional help, or if you are currently a customer of Veracity

3    Networks, please call [Veracity's Utah phone number] or use the form below."  The form allows

4    users to send an email to Veracity, identifying themselves as a current customer (or not) and the

5    services that interest them, and giving them the option of directing their email to either "Sales" or

6    "Support.  Opp'n, Ex. 19.  Considered in the context of all the evidence presented, the website does

7    not give rise to an inference that Veracity sought to cultivate either a California or, alternatively, a

8    national customer base.  It is undisputed that Veracity "conducts no commercial activity in

9    California" and that "residents of California cannot purchase Veracity's services even if they

10   desired."  Mot. at 3; *see also* Opp'n at 7 (assuming truth of those statements but arguing that they

11   "do not relieve" Veracity from California's jurisdiction).  Veracity cannot be compelled to submit

12   to personal jurisdiction in California simply because its website did not discourage California

13   consumers strongly enough.[2]

14     At oral argument, NobelBiz suggested that this Court could exercise personal jurisdiction

15   over Veracity because some of Veracity's customers may have satellite offices in California.  That

16   fact, if true, would not change the analysis.  The activities of Veracity's customers are not the

17   activities of Veracity.  NobelBiz argues that Veracity's customers' activities do bear on this Court's

18   ability to exercise specific jurisdiction over Veracity because it is foreseeable that Veracity's

19   customers will enter the stream of commerce and direct themselves toward California.  The

20   argument is unavailing.  Veracity's provision of internet, cable television, and local and long-

21   distance telephone calling services does not subject it to personal jurisdiction anywhere that its

22   customer's internet activities or long-distance telephone calls can reach.  Such activities conducted

23   by Veracity's customers, on their own behalf rather than Veracity's, are nothing more than the sort

24

25   [2] NobelBiz urges this Court to follow *Wine Group*, but that case is distinguishable.  In *Wine Group*, the Eastern District of California held that the exercise of specific personal jurisdiction was

26   justified where the defendant operated a commercial website that "targeted all fifty states, including California."  *Wine Grp. LLC v. Levitation Mgmt.*, LLC, CIV. 2:11-1704 WBS J, 2011 WL

27   4738335, at *10 (E.D. Cal. Oct. 6, 2011).  Here, Veracity's website emphasizes its character as a

28   Utah business and indicates to non-Utah website users who inquire about the availability of Veracity's services that the services "may not be available where [they] live."  Opp'n, Ex. 19.

1   of "fortuitous" contacts that do not, without more, give rise to specific personal jurisdiction in the

2   forum to which the customer's calls are placed or from which the customer's websites are accessed.

3   *Cf. Mavrix Photo*, 647 F.3d at 1226 (holding that incorporation in California of designers who

4   made and serviced defendant's website was insufficient to confer specific personal jurisdiction over

5   defendant in California).

6       Similarly, NobelBiz argues that Veracity's presence on various social media sites results in

7   personal jurisdiction over Veracity in any forum where these sites can be accessed because these

8   cites feature interactive components and, hence, amount to purposeful direction toward any forum

9   in which a user could interact with Veracity.  At oral argument, NobelBiz went so far as to suggest

10  that *all* activity on social media sites is a form of advertising subjecting the account holder to

11  personal jurisdiction wherever his or her social media account may be viewed.  The Court finds

12  NobelBiz's argument unpersuasive in light of the totality of the record now before it.  Veracity's

13  mere presence on social media sites does not, without more, support an inference that it seeks

14  nationwide sales.  Rather, the predominant feature of Veracity's online presence is the single-

15  mindedness with which it cultivates Veracity's Utah-focused brand.  Veracity's YouTube page

16  appears to show nothing but the trailers of movies available to subscribers to Veracity's "on

17  demand" movie service.  Opp'n, Exs. 23 (identifying the content of Veracity's YouTube channel as

18  "On Demand previews"), 20-21 (screenshots of YouTube page carrying dozens of movie

19  previews).  It is undisputed that only Utah residents may subscribe to Veracity's services.

20  Veracity's Facebook page evinces a similar focus on commerce within the state of Utah: the posts

21  therein are principally comprised of Veracity-related news, announcements of job openings at

22  Veracity (i.e., within Utah), and news items slanted toward a Utah audience, e.g., "10 Apps Utah

23  locals should have," and a link to an online news story headlined "Utah bans teen drivers from

24  using cellphones." *Id.*, Ex. 9 at 1, 2.  As for Veracity's Twitter page, it has 263 tweets—which are

25  protected from view by anyone but Veracity's "confirmed followers." *Id.*, Ex. 29.  The exhibit

26  indicates that Veracity has zero followers. *Id.*  Veracity's Twitter account cannot be said to be

27  aimed at *any* particular forum.  Finally, Veracity has a Pinterest account. *See id.*, Exs. 25-27.  The

28  banner on Veracity's Pinterest page states: "Veracity Networks is a locally-owned, facilities-based

United States District Court
Northern District of California

United States District Court
Northern District of California

1  telecommunications provider servicing commercial customers and residential customers *in Utah*."

2  *Id.*, Ex. 25 (emphasis supplied).  NobelBiz has not satisfied the Court that Veracity's presence on

3  social media, or elsewhere on the Internet, amounts to express aiming at California or any broader

4  market including California.[3]

5  **IV.    CONCLUSION**

6      For the foregoing reasons, the Court **GRANTS** the motion of Defendant Veracity Networks,

7  LLC to dismiss this action for lack of personal jurisdiction.  The Court hereby **DISMISSES** this case

8  without prejudice to later refiling in a court of competent jurisdiction.

9      **IT IS SO ORDERED**.

10

11  Date: September  27, 2013

        **YVONNE GONZALEZ ROGERS**

12          **UNITED STATES DISTRICT COURT JUDGE**

---

[3] The Court **DENIES** NobelBiz's motion for jurisdictional discovery.  Opp'n at 14.  "Although there is no definitive Ninth Circuit authority specifically addressing the level of showing that a plaintiff must make to be entitled to jurisdictional discovery, district courts in this circuit have required a plaintiff to establish a 'colorable basis' for personal jurisdiction before discovery is ordered. [*Citations.*]  This 'colorable' showing should be understood as something less than a prima facie showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Johnson v. Mitchell*, 2012 U.S. Dist. LEXIS 65934, at \*19-20 (E.D. Cal. May 10, 2012).  "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir.1995)).  Here, as set forth above, NobelBiz has not established a colorable basis for personal jurisdiction.  It has offered only bare allegations, which are amply controverted by its own supporting documents.